**MAGRUDER, Collector of Internal Revenue, v. YELLOW CAB CO. OF D. C., Inc.**

No. 5193.

Circuit Court of Appeals, Fourth Circuit.

March 3, 1944.

John W. Fisher, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellant.

John E. Hughes, of Washington, D. C. (William Cogger, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Yellow Cab Company of D. C., Incorporated, (hereinafter called Yellow Cab), instituted a civil action in the United States District Court for the District of Maryland against M. Hampton Magruder, Collector of Internal Revenue (hereinafter called the Collector), to recover back $7,490.93 paid by Yellow Cab for federal insurance contribution taxes levied under the Internal Revenue Code, 26 U.S.C.A. §§ 1400, 1410, amending the Social Security Act of 1935. Judge Chesnut, sitting in the District Court without a jury, found in favor of Yellow Cab and entered judgment accordingly. Judge Chesnut wrote an elaborate opinion (49 F.Supp. 605) and made appropriate findings of fact and conclusions of law. The Collector has duly appealed.

In the brief of Yellow Cab it is stated: "This case might well be affirmed per curiam on the able opinion of Judge Chesnut". There is much of force and sweet reasonableness in this suggestion. The question, though, is one of no little public importance so that we shall add a brief commentary on this opinion, with which we find ourselves in hearty agreement, not only as to the conclusions reached but also as to the supporting reasoning and authorities.

■ It is crystal clear that two essential conditions precedent must concur in order that a valid tax may be here levied: (1) There must exist a relationship of employer and employee; (2) wages must be paid by the employer to the employee. In no uncertain terms, Judge Chesnut negatived the existence of both of these conditions precedent. To say, under the terms of Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c, that Judge Chesnut's findings and conclusions are not "clearly erroneous", is, we think, largely in the nature of an exaggerated euphemism. We proceed to a brief consideration of the two problems: (1) The relationship; (2) wages.

(1) *The Relationship.*

"The conclusion of the District Court that the relationship between the taxpayer and the drivers was that of lessor and lessee, and not that of employer and employee, rests upon a narrow technical analysis, and particularly the taxpayer's claimed want of control over the drivers." So we are told in the brief of the Collector. We cannot agree.

The applicable Treasury Regulations 106, Section 402.204, does set out as the proper criterion: "control of the employer not only as to what shall be done (by the employees) but how it shall be done." It is perfectly clear here, we think, that any such measure of control, as Judge Chesnut demonstrated, simply did not exist. It is easy to distinguish the case of Jones v. Goodson, 10 Cir., 121 F.2d 176 (on which the Collector here relies) by comparing the elaborate elements of control set out in Judge Bratton's opinion (121 F.2d at page 180) with Judge Chesnut's opinion in the instant case.

■ The contract which forms the basis here for the relationship between Yellow Cab and the drivers is quite clear and utterly lacking in ambiguity. This contract is in form a lease, it is called a lease, it contains the provisions normally found in a lease. The drivers acquire from Yellow Cab the possession and beneficial use of the taxicabs; Yellow Cab receives from the drivers a stipulated sum of money as rent paid for such use. We see in this contract the hired use of a thing, the classical bailment known as locatio rei, only that and nothing more.

And there is nothing here to indicate that this contract is a sham to cloak the real relationship. This form of contract was prompted by economic necessity when taxicabs in the District of Columbia shifted from the meter system to the zone system. Hardly could the contract be called a colorable device to escape the instant tax; for the contract was made before the passage of the statute which imposed the tax.

■ It may well be that Yellow Cab is legally liable to passengers injured through the negligence of the drivers. If so (and we express no opinion on this question) this liability would be predicated upon the doctrine of estoppel, or a holding out to the public. It is even possible that there has been here a violation of Order No. 1059, Section 6 of the Public Utilities Commission of the District of Columbia: "No public vehicle licensed under the provisions of Paragraph 31(D) of the Act of July 1, 1932, shall be operated by any person other than the owner of such vehicle or his duly authorized employee." But we are told that no move has ever been made to enforce this provision against either Yellow Cab or its drivers. In any event, these considerations are in no way determinative of the actual relationship between Yellow Cab and its drivers; for the nature of that relationship stems from the contract between the parties.

(2) *Wages.*

■ We think, too, that Judge Chesnut was eminently correct in his finding of fact: "Plaintiff (Yellow Cab) paid no money to the drivers for wages or otherwise." Yellow Cab paid nothing to the drivers, that is conceded. The only money passing between Yellow Cab and the drivers was paid by the drivers to Yellow Cab as rent for the taxicabs. We are asked to hold, though, that the fares received by the drivers from passengers constitute wages paid by Yellow Cab to the drivers. Our imaginations are not quite so lively. It is true that the term "wages" is given a broad meaning by the Regulations, but we might point out that Social Security Tax Regulations 106, Sections 402.228(e) and 403.228 expressly exclude from the denotation of wages: "Tips or gratuities paid directly to an employee by a customer of an employer and not accounted for by the employee to the employer." In the instant case, Yellow Cab had no title or interest in, no power to make the drivers account for, the money received by the drivers from passengers. Yellow Cab was entitled to

326

receive, and did receive, only the rent paid by the drivers.

There can, of course, arise the relation of employer and employee without the payment of wages. A young doctor, for example, might become an employee of a distinguished physician without any pecuniary compensation. The youthful medico might feel that he is amply compensated by the knowledge and experience he acquires, and the prestige he derives, from association with an eminent colleague. Hardly could it be said here that the budding disciple of Aesculapius is the recipient of "wages", as that term is used in the instant tax statute.

Judge Chesnut also aptly pointed out the difficulties, which are many and obvious, in administering this tax statute if it be held to cover the activities of Yellow Cab and its drivers.

The judgment of the District Court is affirmed.

Affirmed.