## LORING et al. v. UNITED STATES.

### Civ. No. 6441.

United States District Court
D. Massachusetts.

Oct. 26, 1948.

Richard N. Bail and Gaston, Snow, Rice & Boyd, all of Boston, Mass., for plaintiffs.

William T. McCarthy, U. S. Atty., and W. Arthur Garrity, Jr., Asst. U. S. Atty., both of Boston, Mass., Theron Lamar Caudle, Asst. Atty. Gen., and Andrew D. Sharpe and A. Barr Comstock, Sp. Assts. to the Atty. Gen., for defendant.

FORD, District Judge.

This is a suit for the recovery of taxes assessed against and collected from the plaintiffs for the years 1940 to 1945, inclusive, under the Federal Unemployment Tax Act, 26 U.S.C.A. §§ 1600–1611, Title IX of the Social Security Act, as amended, c. 531, 49 Stat. 639–645, 42 U.S.C.A. § 1101 et seq., and for the period April 1, 1942 to March 31, 1946 under the Federal Insurance Contributions Act, 26 U.S.C.A. §§ 1400–1403, 1410–1411, 1420–1432, Title VIII of the Social Security Act, as amended, c. 531, 49 Stat. 636–639, 42 U.S.C.A. § 1001 et seq.,

The facts, for the most part, have been stipulated and are as follows:

The individual plaintiffs are now, and during the period of time material to this case, have been trustees of the Beacon Chambers Trust (hereinafter called the Trust) under an agreement and declaration of trust dated March 20, 1899. The trustees use the collective designation "Beacon Chambers Trust" and under such name execute the powers and perform the duties conferred upon and required of them collectively by the said agreement.

The property of the trust consists principally of real estate located in Boston, Massachusetts. There is a group of several buildings, parts of which are rented as stores and apartments to various tenants, and in part of which the trust operates a 360-room lodging house for men.

Under the agreement, the trustees are charged with the duty of using the money coming to them as trustees for the purchase and improvement of the real estate and the purchase of furniture and fixtures therefor. They are given sole ownership, control, power of sale, leasing, and letting all property at any time held by them; power to exchange trust property, or to purchase adjoining real estate; power to invest funds in their hands in personal property; to pay necessary expenses; to employ officers, brokers, engineers, architects and agents as they think fit, fix their compensation and define their duties; power to borrow money up to $50,000 to meet temporary exigencies and to the extent of $200,000 by mortgage for the purpose of alteration of the trust property and construction of new buildings.

The beneficial interest in the trust is represented by shares, both common and preferred. These shares are transferable, and shareholders are not to be personally liable on contracts made by the trustees. There is to be an annual meeting of the shareholders with provision for the calling of special meetings. At any meeting the shareholders by vote of three-fourths in value of the shares may fill vacancies among the trustees, remove any or all trustees, direct the sale of the property, alter or terminate the trust or substitute a new trust therefor. From the income of the trust the trustees are to pay cumulative dividends on the preferred shares, set aside, after paying dividends on the preferred and common shares, a contingent fund out of surplus as they think best and divide the remainder of the income among holders of the common shares at such times as they deem best.

The trustees, by the terms of the agreement, receive as compensation for their services 5% of the gross annual income of the trust. The taxes here in question were assessed and paid on the sums received during the tax years in question as a result of a ruling by the Commissioner of Internal Revenue that the commissions of the trustees were taxable wages within the meaning of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

The trustees, who are concerned also in other trusts and business ventures, devote only a small part of their time to the affairs of this trust. They engage 30 or 40 employees, with a manager or superintendent who performs the detailed, day to day duties of managing the property. The trustees, who are brothers, and occupy adjoining business offices, meet informally from time to time, usually about once a month, to discuss trust affairs. All important trust matters are discussed, and agreement as to the handling of them is reached at such meetings.

Caleb Loring, who is also holder of over 31% of the shares of the trust, functions as the active trustee. He spends about 25% of the total time he devotes to trust affairs in working by himself in the handling of trust matters. This portion of his work consists in visiting the property for an hour about once a week, and in consultation with the superintendent during these visits, or during visits by the superintendent to his office.

The other trustee, Augustus P. Loring, Jr., devotes little time to trust affairs outside of the time spent in conferences with his co-trustee and in the study of financial reports. About 5% of the total time he devotes to trust matters is occupied in visits to the property and conferences at his office with the superintendent on occasions when

Caleb Loring is unable to perform these duties.

On the basis of this unequal division of labor, the compensation of the trustees is divided on the basis of ¾ to Caleb Loring and ¼ to Augustus Loring. Part of the compensation thus received by each of them is paid over by them to the Loring Coolidge Service Corporation, which renders bookkeeping services to the trust.

The trustees testified and I find it to be a fact that at all times when the trustees acted individually, they acted as and in their capacity as trustees; in accordance with their duties as trustees; and according to the customary practice of trustees in the kind of trust involved in this case.

The question involved here is whether the trustees of the Beacon Chambers Trust are employees within the meaning of the Social Security Act. Since the tax under the Social Security Act is one levied on the employer-employee relationship, the question resolves itself into one of whether that relationship can be found to exist here.

The pertinent definitions in the Internal Revenue Code, 26 U.S.C.A. §§ 1426(d) and 1607(i), as amended by Sec. 1(a) of P.L. 642, 80th Cong.[1] now exclude from the definition of employee any individual (except an officer of a corporation) who is not an employee under the usual common law rules applicable in determining the employer-employee relationship.

■ There is no single test which will determine in all cases the existence of such a relationship, and each case must rest on its own facts. United States v. Wholesale Oil Co., Inc., 10 Cir., 154 F.2d 745. But the most important factor has been the existence of a right in some one else, either an individual or a collective entity, to control the employee in the performance of his work "not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished." Treasury Regulations 107,

Sec. 403.204. This test is appropriate here, where the issue is indeed whether there does exist any entity which can be said to control or have the right to control the trustees in the performance of their duties.

It is the contention of the plaintiffs that they are subject to no such control, that they were under no duty to take orders from any one who could conceivably stand to them in the relation of an employer.

The government has not contended that the elements of ultimate control which may reside in the shareholders of this trust are sufficient to distinguish this case substantially from United States v. Griswold, 1 Cir., 124 F.2d 599, where it was held that the trustees were not employees of the shareholders. But it does contend that the activities of the trustees should be divided into two classes. In one class it contends are those activities of the trustees acting as a unit in the conferences which they held on trust business, and in the performance of which the trustees, like corporate directors in their attendance at and participation in board meetings, are not employees and the wages the trustees received as compensation for their services are not taxable. In the other class are the services which either of the trustees performs as an individual without the collaboration of his co-trustees and which might be delegated to others. In performing these latter services he is to be regarded as an employee subject to the control of the trustees acting collectively as a unit. Cf. United States v. Dunbar, 9 Cir., 154 F.2d 889. The contention is that a trustee acting individually is the counterpart of a corporate officer in an organization substantially similar to a corporation (Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263) and so can be an employee just as can the corporate officer who is also a director of the corporation.

■ This involves separating into two distinct categories duties performed by one

---

[1] Section 1426(d). "Employee.—The term 'employee' includes an officer of a corporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

individual in a single capacity—that of trustee. Such a splitting of the personality of a trustee has been disapproved, United States v. Griswold, supra, 124 F.2d at page 601, where the court said: "Some argument can be made that these trustees in performing some of their duties act like policymaking controlling directors of a corporation and in performing other duties act like corporate officers subject to a board, and that they should be treated as employees insofar as they act like corporate officers. While there may be some merit in this argument, we are not prepared to take the step of splitting the personality of the trustees in this fashion. * * *" The mere fact of physical separation, the fact that trustees act together or alone, is not enough without a genuine difference in the nature of the duties involved. And because a trustee could delegate some of his duties to some one equally competent to act is not enough. Of course, in situations such as that in United States v. Dunbar, supra, where a trustee devotes his entire working time to trust affairs, it may be that much of what he does is of such a nature that it could as well be performed by subordinate employees. But the question here is not whether a trustee can in any circumstances be an employee, but whether the plaintiff-trustees in this case, acting as trustees customarily act in a trust of the nature of the one here, can properly be considered employees in respect of the services they performed individually outside of their meetings, viz., periodic visits to the trust property and conferences with the superintendent which took but a small part of their whole working time and were in line with the duties of a trustee. A trustee, if he is to execute his trust with the care required of a prudent man, must keep himself reasonably informed as to the condition of his property and the progress of trust affairs. He surely does not become an employee if he chooses to fulfill this responsibility by visits to the property or conferences with the agent who has been placed in charge of it. Nor does it make any substantial difference that he finds it more convenient to do this alone instead of doing it only in the company of his co-trustee. The nature of the individual activities of the trustees here is too intimately connected with the fulfilment of their fiduciary responsibility to justify any such separate classification as has been proposed. Further, the dividing line between what activities might be delegable, and what not, is too difficult to draw when you are concerned with tasks usually performed by the trustees themselves. There was no power granted to the trustees by the trust instrument to delegate their powers and duties. Also the trustee must consider personal liability in delegating any duties. 2 Scott, Trusts, Sec. 224.2

The proposal by the government to regard the individual trustee as being subject to the control of the trustees as a unit become no more than an abstract and impracticable concept when viewed in the light of the usual rule which requires the concurrence of all the trustees in the exercise of their powers. 2 Scott, Trusts, Sec. 194; Downey Co. v. Whistler, 284 Mass. 461, 188 N.E. 243. There can be no real right to control a trustee who by his own dissent can invalidate any order given to him. And such right to control involves a corresponding duty of obedience, which would involve a conflict whenever the individual trustee believed that by obeying he would be himself performing an improper action, or at least make himself liable by acquiescing in or cooperating with improper action by a co-trustee. 2 Scott, Trusts, Sec. 224.

There is nothing in the case of Morrissey v. Commissioner, supra, and its companion cases that points to a different solution. They merely determine that for the purpose of income, capital stock, and similar taxes, where the substantial economic nature of the entity governs the tax classification into which it falls, a business trust such as the one in this case, is in so many ways similar to a corporation that it is for the purposes of these taxes to be classed as an association, rather than placed in the same category with the traditional trust for the collection and distribution of income.

Assuming, as the government contends, that directors of a corporation (see United States v. Dunbar, supra) may

be employees of the corporation, and directors and trustees function in a somewhat similar manner, yet there are differences between a corporation and a business trust and these cannot be ignored in determining whether there is an employer-employee relation when they have a bearing on the issue here. Whether a given individual is an employee is decided not by the general economic nature of the entity of which he forms a part but by the nature of the position which he occupies in that entity. Trustees differ in many respects from corporate directors or officers. The duties of a corporation director as director are limited to his participation in the work of the board and its meetings and when he so acts, he is not an employee. As an individual director apart from the board, he has no power to act for the corporation. In order to do so he must also be named an officer or other agent. Here there is no difficulty in differentiating between his activities. The sum total of his powers and duties arises from the fact that he is serving in two distinct capacities—a director and agent—and these may afford a justifiable basis for dividing his services into two categories, one of which constitutes employment, and one of which does not. Cf. United States v. Dunbar, supra. But though a trustee of a business trust may have powers and duties similar to those of a director, they all arise from his single capacity as trustee and he does not act in two capacities in performing the usual duties of a trustee. The trustee is not appointed as an agent by any trust entity to perform the customary duties of a trustee. A trustee can by virtue of the fact that he is a trustee deal as principal in all matters of trust business. And what is of the utmost importance, assuming a trustee may act, as does a director of a corporation, in two distinct capacities, we do not have a case here where trustees are acting in two distinct capacities, as cotrustee and as appointed agent. They were acting only in one capacity—that of trustee. There is no evidence here the trustees acting as a unit employed any trustee as an agent to perform duties not ordinarily performed by trustees. There is no evidence the trustees performed any duties not usually performed by a trustee in a trust of the kind involved here. Certainly the government cannot contend that the dividing line between employment and non-employment is where a trustee acted in an individual capacity, though still acting as trustee. Lastly, there is no evidence that the trustees were controlled by any one in the performance of the work they performed. This is not a case of a trustee performing duties not ordinarily performed by a trustee when it might be said he was acting as an employee. In such cases, if there be such, e. g., painting a house, doing repair work or some other task easily dissociated from the usual work of a trustee, it might be conceivable to reach a conclusion that with respect to these tasks the trustee was an employee. Cf. United States v. Griswold, supra, 124 F.2d at page 602. We do not have that case here.

The conclusion is that the trustees of the Beacon Chambers Trust were not employees of the Beacon Chambers Trust during the taxable years in question and the commissions received by the trustees were not taxable wages within the meaning of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

Judgment is to be entered for the plaintiffs with interest and costs.